TIMMERMAN *v.* HENRY L. DOHERTY & CO.

1. LICENSES—BLUE SKY LAW—POWERS OF SALESMAN—PRESUMPTIONS.

Where a salesman of stocks and bonds was licensed and commissioned as such under the blue sky law (Act No. 220, Pub. Acts 1923), at the request of the broker which employed him, it will be presumed that all the powers necessary to a proper discharge of his duty under such license were conferred upon him.

2. PRINCIPAL AND AGENT—BROKERS—UNDISCLOSED PRINCIPAL LIABLE FOR AGENT'S FRAUDULENT ACTS.

Under the blue sky law (Act No. 220, Pub. Acts 1923), and the broker's contract of employment of a licensed salesman, the broker is liable as matter of law for the fraudulent act of its salesman in procuring and selling stock of clients, although during the course of said transaction he did not disclose his agency, nor submit the facts in connection therewith to his principal as required by his contract, since said act was within the scope of his authority and in the course of his employment, and the broker is liable as an undisclosed principal.

Error to Ottawa; Cross (Orien S.), J. Submitted January 11, 1929. (Docket No. 101, Calendar No. 34,080.) Decided March 28, 1929.

Assumpsit by Benjamin Timmerman and another against Henry L. Doherty & Company for an amount due on the fraudulent sale of corporate stock. Judgment for defendant. Plaintiffs bring error. Reversed, and judgment ordered entered for plaintiffs.

*Dilley, Souter & Dilley* and *Fred T. Miles,* for appellants.

*Diekema, Kollen & Ten Cate,* for appellee.

SHARPE, J. This case has once been before this court (243 Mich. 344), where a directed verdict in favor of the defendant was reversed and a new trial granted. There is little dispute as to the facts. Defendant, a foreign corporation, was duly licensed as a dealer in stocks and securities in this State by the Michigan securities commission and Bultman as a salesman under it. Without revealing his agency, Bultman secured from plaintiffs 335 shares of Woodley Petroleum stock to sell for them at $10 per share, giving his individual receipt therefor. He made payment of $350 for 35 shares he had sold at $10 per share, and gave them his check for $2,700, the value of the remaining 300 shares at $9 per share. This check was not paid. They here seek to recover from defendant as his undisclosed principal. Plaintiffs' motion for a directed verdict was denied and the case submitted to the jury, who found for the defendant. The motion was thereafter renewed and denied. Plaintiffs here seek review by writ of error of the judgment entered on the verdict.

A dealer, so far as is here applicable, is defined in section 21 of Act No. 220, Pub. Acts 1923 (the blue sky law), as "any person who buys or sells securities for another, for any consideration, or on commission," and a salesman as "any person who solicits sales or purchase of securities either for or on behalf of and in the employ of a dealer." Section 22 provides for the issue of licenses to both dealers and salesmen, and the payment of the fee therefor. It contains the following:

"Every applicant for a dealer's license shall file with his application a bond in the sum of ten thousand dollars, running to the people of the State of Michigan, in such form and with such sureties, if any, as the commission may designate, such bond to

be conditioned upon the faithful compliance with the provisions of this act by said dealer *and all salesmen registered by him.*"    (The italics are ours.)

It further provides:

"The salesman's license shall be issued to the dealer with whom he is registered, and retained by said dealer."

The bond of the defendant filed with the commission failed to provide for compliance with the provisions of the act by its salesman as required by section 22.  It is apparent, however, from defendant's letter, quoted in part hereafter, that it protected itself against unwarranted acts of Bultman by a surety company bond.

Defendant, as a dealer, was empowered by the license issued to it to buy or sell securities.  Bultman applied to the commission for a license authorizing him "to transact the business of a salesman of stocks, bonds, and other securities in conformity with the law regulating and licensing such business in the State of Michigan."  The defendant indorsed his application with a statement that he was "honest, truthful, of good reputation, and entirely worthy of the license for which he applies," and requested that his application be granted, and it was granted and the license issued.  Bultman had a right under such license to solicit "sales or purchase" from those with whom he came in contact.  Before such license was issued, and on August 1, 1926, defendant had entered into a written contract with him to act as such salesman "for the purpose of the sale of securities offered for sale by the company."  This contract contained the following provision:

"In the event that clients desire to sell securities, the market for which is under the direction of the

company, if the salesman shall deem it advisable to
acquire other securities, the salesman is to promptly
submit the material facts with the salesman's recom-
mendation to the manager who will be advised as
to the action to be taken. Unless such procedure is
carried out, the salesman will be held responsible for
any loss sustained."

While Mr. Timmerman testified that Bultman, at
the time he secured the stock from the plaintiffs,
"said he worked for a company, had a license for
it," it is conceded that defendant's liability, if any,
is that of an undisclosed principal. The rule of law
applicable thereto was so well stated by Mr. Justice
Fellows on the former hearing that it need not be
here repeated. To render the defendant liable as
such, it must appear that Bultman's acts in his deal-
ings with plaintiffs were "within the scope of his
authority and in the course of his employment."
This language must, of course, be construed in con-
nection with the language of the statute under which
his license, presumably in the hands of the defend-
ant, was obtained. Having been so licensed and
commissioned at the request of defendant, it will be
presumed that all the powers necessary to a proper
discharge of his duty under such license were con-
ferred upon him; in other words, that his authority
to act was commensurate with the duty imposed.
Had he informed the plaintiffs that he was acting as
a salesman for the defendant and made the deal with
them on its behalf, it seems clear that his act in do-
ing so would have been within the power conferred
upon him as a salesman by the statute and the license
issued. The transaction would then have been
"within the scope of his authority and in the course
of his employment." And if so, it follows that his
failure to disclose that he was acting for the defend-

ant did not affect the nature of his employment nor the duty he owed the defendant as such salesman. He had no right to enter into the transaction as an individual, and, had he made a profit therefrom, the defendant, when so informed, would have been entitled to its proportionate share thereof. That his purpose may have been to defraud the plaintiffs is immaterial. He was the licensed salesman of the defendant, and had given it a bond for the faithful performance of his duties as such. The transaction was one he might lawfully have entered into under the statute on behalf of the defendant, and defendant's liability to the plaintiffs is clearly within the rule governing an undisclosed principal. The license issued empowered Bultman to act as defendant's salesman. The question of "apparent authority" is not presented.

It remains to consider the effect of the contract entered into between the defendant and Bultman, the applicable provisions of which have been already quoted. It could not in any way lessen defendant's liability for any acts which Bultman might lawfully do under the license issued to him. While the contract prescribes what Bultman should do in case securities were offered to him for sale, it provides that "unless such procedure is carried out, the salesman will be held responsible for any loss sustained." Responsible to whom? Surely not to the party with whom the salesman was dealing, else the provision would not have been inserted. Clearly to the defendant, which has presumably provided against such loss by requiring a bond from the salesman, conditioned for the faithful performance of his duties under the contract and under the statute. It is apparent that the defendant so construed the contract from the correspondence which followed. On May 21,

1927, plaintiffs' attorney wrote defendant, advising it of Bultman's dealing with the plaintiffs and others, and that in response to an inquiry addressed to the Michigan securities commission he was informed by letter that Bultman was registered as its agent or salesman and that his license was still in effect. On receipt of this letter defendant asked by wire to be informed by wire as to the dates of such purchase, and this information was at once furnished. A letter was also at once sent to defendant, containing fuller particulars. On May 25, 1927, defendant wrote plaintiffs' attorney, stating that Bultman "was discharged as a salesman by us on November 1, 1926, as his production as a salesman did not warrant continuing him in our employ." This letter also contained the following:

"If you will furnish us with complete information covering the transactions of    *    *    *    October 4, 1926, with Benjamin and Jennie Timmerman, we will immediately take this up with the bonding company who carried Mr. Bultman's bond; in order to arrange for a settlement with these clients. It will be necessary that these clients file affidavits setting forth their transactions together with the amount of loss sustained by them. Upon receipt of these affidavits we will immediately file same with the bonding company."

An affidavit of Mr. Timmerman, stating fully the particulars of the transaction, was at once made and sent to defendant. On June 1, 1927, defendant acknowledged its receipt, and stated that it had "filed this information with the bonding company." On June 23d, in response to an inquiry, defendant stated that it was "awaiting word" from the bonding company "relative to this situation." No settlement having been proposed or reached, this action was begun on July 23d of that year.

The motion of the plaintiffs for a directed verdict, which had been reserved and denied, should have been granted. Remand will be had and the court directed to enter a judgment for plaintiffs, with costs of both courts.

North, C. J., and Fead, Fellows, Wiest, Clark, McDonald, and Potter, JJ., concurred.