TIMMERMAN *v.* BULTMAN.

1. EXCEPTIONS, BILL OF—EXTENSION OF TIME FOR SETTLING—MOTION FOR NEW TRIAL.

Motion to amend findings of court under Circuit Court Rule No. 45, in case tried without jury, should be treated as motion for new trial under 3 Comp. Laws 1915, § 12634, and time for settling bill of exceptions governed thereby.

2. LICENSES—BLUE SKY LAW—LIABILITY OF EMPLOYER FOR SALESMAN'S FRAUD AFTER DISCHARGE.

Where customer's dealings with salesman licensed under blue sky law (Act No. 220, Pub. Acts 1923) took place after his discharge but before his license was canceled, his employer is liable for his fraudulent acts.

3. SAME—NECESSITY TO CANCEL LICENSE ON DISCHARGE OF SALESMAN.

Stock dealer, to relieve himself from fraudulent acts of salesman after his discharge, must surrender to securities commission salesman's license for cancellation.

Error to Ottawa; Cross (Orien S.), J. Submitted October 7, 1930. (Docket No. 14, Calendar No. 35,020.) Decided January 7, 1931.

Assumpsit by Henry Timmerman against Richard H. Bultman and others for an amount due on fraudulent sale of corporate stock. Judgment for defendants Henry L. Doherty & Company and Fidelity & Deposit Company of Maryland, Inc. Plaintiff brings error. Reversed, and judgment ordered entered for plaintiff.

*Dilley & Dilley,* for plaintiff.

*Diekema, Kollen & Ten Cate,* for defendants Henry L. Doherty & Company and Fidelity & Deposit Company of Maryland, Inc.

SHARPE, J. The material facts in this case differ from those considered by this court in *Timmerman* v. *Bultman,* 243 Mich. 344, and *Timmerman* v. *Henry L. Doherty & Co.,* 246 Mich. 19, in the following particulars only: Bultman, upon inquiry of the plaintiff, stated that he was the salesman of Doherty & Co. (hereafter called the defendant), and the defendant claims that Bultman was discharged by it prior to the transaction between him and the plaintiff. The trial court, before whom the case was tried without a jury, found that Bultman was discharged on October 22, 1926, and that plaintiff's dealings with him were had on November 16th of that year. For that reason he concluded that defendant was not liable, and entered a judgment in its favor, of which plaintiff seeks review by writ of error.

1. *Motion to Dismiss.* Before considering the question thus presented, a preliminary matter must

be disposed of. On September 6, 1930, the defendant filed a motion in this court to strike the bill of exceptions from the files and dismiss the writ of error, for the reasons:

(1) "Because the bill of exceptions was not signed within the time provided by law."

(2) "Because the printed and manuscript record shows that no final judgment has been returned."

This motion was held in abeyance to be considered and disposed of with the case on review. We were unwilling to dismiss for the second reason assigned if a judgment had in fact been entered. A certified copy thereof, furnished at our request by the clerk of the circuit court, is now on file in this court. It forms no part of the bill of exceptions, but should have been inserted in the printed record, and we treat it as a part thereof.

At the time of the entry of the judgment, on December 28, 1929, the trial court filed findings of fact and conclusions of law pursuant to the written request therefor of the plaintiff's attorney. On January 5, 1930, the plaintiff filed "Proposed Amendments to Findings." The term of Judge Cross, who heard the case and entered the judgment, expired on December 31, 1929. His successor, Judge Miles, had acted as one of the attorneys for the plaintiff. A hearing on the proposed amendments to the findings was had before Judge Pugsley, of the 27th Judicial Circuit. On March 25, 1930, he entered an order refusing to amend the findings. The plaintiff on the same day filed exceptions to the order so made and to the findings made by Judge Cross. On April 9, 1930, plaintiff noticed the bill of exceptions for settlement on April 14th, and it was settled on that day over defendant's objection "that the time has expired in which same could be legally settled."

Proposed amendments to findings are provided for in Circuit Court Rule No. 45. It appears that plaintiff has fully complied with the requirements thereof. Under section 12634, 3 Comp. Laws 1915, the trial court or judge thereof may allow "such time as shall be deemed reasonable" to settle a bill of exceptions—

"*Provided,* That no more than twenty days shall be allowed for such purpose, except upon the production of a certificate from the stenographer of said circuit stating that the party desiring such extension has ordered a transcript of the testimony necessary for the preparation of said bill of exceptions, and that the same will be furnished as soon as possible by said stenographer. If a motion for a new trial is made within said twenty days, and such motion be denied the time to settle a bill of exceptions may be extended twenty days from the date of such denial without the production of such certificate."

The question here presented is whether the filing of proposed amendments to the findings made by the court, on trial without a jury, is, in legal effect, the making of a motion for a new trial. The confusion arises over the fact that the provision for amendments is made by rule of court and that for motion for new trial by statute.

The reason for providing that the time for perfecting the bill of exceptions shall not begin to run until the motion for a new trial, if seasonably made, is disposed of, is apparent. The litigant dissatisfied with the verdict and the judgment entered thereon should not be put to the expense of procuring a transcript of the record until the motion is disposed of, because, if granted, he would thereby incur a needless expense. The same reasoning applies when amendments to the findings are proposed. If

granted, in this case the judgment would necessarily have been set aside and one entered in favor of the plaintiff. If denied, the judgment would stand as entered, but the appellant might include the proceedings had thereon in the bill of exceptions and allege error thereon, and he need not have noticed the bill for settlement while such proceedings were pending. In our opinion, the motion to amend the findings should be treated as a motion for a new trial and be governed by the provisions relative thereto. It follows that the motion to dismiss is denied.

2. *Discharge of Bultman.* The finding that Bultman was discharged by the defendant on October 22, 1926, is supported by the evidence. The contract between them was made in writing on August 1, 1926, and provided that it might be terminated at any time by either party upon written notice to the other.

Act No. 220, Pub. Acts 1923 (2 Comp. Laws 1929, § 9769 *et seq.*), created the Michigan securities commission. It provides for the licensing of persons who desire to engage in the business of dealing in securities or of selling or soliciting the sale thereof in this State. The terms ''dealer'' and ''salesman'' are defined therein. Every applicant for a dealer's license must accompany his application with a bond in the sum of $10,000, ''conditioned upon the faithful compliance with the provisions of this act by said dealer and all salesmen registered by him.'' These licenses run from July 1st to June 30th of the succeeding year, ''and shall be upon such forms as may be prescribed by the commission. * * * The salesman's license shall be issued to the dealer with whom he is registered, and retained by said dealer.''

Bultman applied for a license as a salesman on August 2, 1926. His application was indorsed by

the defendant with a statement that he was then in its employ, and that he was "honest, truthful, of good reputation and entirely worthy of the license for which he applies." The license was issued on August 12, 1926. On the bottom of it appeared the following printed notation, "This license must be retained by the dealer."

Russell S. Williams, "field manager of H. L. Doherty Company, having charge of sales activities in western Michigan," testified that on October 23, 1926, he discharged Bultman "orally and verbally, and wrote him a letter to that effect when I returned to Grand Rapids." Plaintiff urges that the discharge, to be operative, must have emanated from an officer of the company. We are unwilling to rest decision upon this claim. On October 23, 1926, Williams wrote Alfred Rice, "district representative for the State of Michigan for Henry L. Doherty & Company," with headquarters in Detroit, as follows:

"With regard to the situation at Holland, I have found it necessary to let Mr. Bultman go. I have done this for the reason that I discovered some transactions in the town of Fennville, handled by Mr. Bultman in a manner that would not be sanctioned by the House."

After stating the things done by Bultman which prompted his action, the letter concluded:·

"I have let Mr. Bultman go for the reason that I am sure we have no place in our organization for a salesman who is not absolutely honest and above board. Will you therefore advise New York to strike Mr. Bultman's name from our roll."

On April 21, 1927, about six months thereafter, the defendant wrote the commission, stating that Bultman was in its employ up to November 1, 1926, "at which time he was dismissed," and asked if he

still held a license in Michigan; "also the date on which Mr. Bultman's 1926 license was canceled." In reply thereto, the commission informed defendant "that Mr. Bultman was licenfsed for you in this State August 12, 1926, and his license has never been canceled." On April 29th the company wrote the commission: "We are attaching hereto license to sell securities issued to Richard H. Bultman. Mr. Bultman left our employ on November 1st, but through error, we did not return the license to you for cancellation." On May 4th the commission advised the company that the license had been canceled.

Bultman's dealings with plaintiff on which his cause of action is founded occurred in November, 1926, after his discharge, but before the surrender of or cancellation of his license. We have set forth the facts at some length as we think they have a bearing upon the effect which should be given to the discharge.

The purpose of Act No. 220, above referred to, is well stated in its title:

"An act to prevent fraud, deception and imposition in the issuance, sale or disposition of stocks, bonds and other securities sold or offered for sale within the State of Michigan."

The last sentence in section 3 thereof reads as follows:

"The provisions of this act shall be liberally construed to the end that the purposes thereof may be accomplished by preventing fraud, deception and imposition on purchasers of securities."

The legislature realized that the salesmen who in most cases deal directly with the persons having such securities for sale, or who desire to purchase them, have opportunity to perpetrate the frauds

which the law seeks to prevent, and so provision was made that they should be licensed, and that the dealer's bond should guarantee their faithful compliance with the law. The statute does not in express terms provide for the cancellation of a salesman's license by the commission on its return to it by the dealer. But such return automatically works a 'cancellation or revocation, for the reason that, when it is returned to the commission, there is no longer a license in the hands of the dealer under which the salesman has any authority to act.·

It is urged that the plaintiff did not consult the records of the commission or rely upon them in his dealings with Bultman. These are records kept in a public office, and open to the inspection of all who have occasion to examine them. Prudence, perhaps, should cause those dealing with a person representing himself to be a salesman to ascertain the truth of his statement in that respect. If he does not, he acts at his peril. The fact that there is a public record of the authority of the salesman to act, in itself, justifies greater reliance being placed upon his representation that he is legally licensed. But when the fact appears, as it does here, that, had such an inspection been made by the plaintiff, it would have revealed the truth of Bultman's statement, we are of the opinion that the record may be resorted to by plaintiff to establish the then existence of the relationship.

The purpose of the license under the statute is to afford protection to any person dealing with a salesman. The defendant by its bond guaranteed that Bultman would perform his duties as such in compliance with the law. It discovered that he was not doing so; that he had been engaged in transactions "that would not be sanctioned" by the defendant; that he was "not absolutely honest and above

board." It very properly discharged him, but, on doing so, its officials owed a duty to the public, and among them the plaintiff, as well as to its stockholders, to terminate his right and authority to further act as such by the surrender of his license, which, under the statute, it had retained in its possession. It did not do so for more than six months thereafter, and in the meantime Bultman, representing himself to be defendant's salesman, committed the fraud upon plaintiff on which this action is founded. Had it done so, Bultman thereafter would have acted as an unlicensed salesman and been subject to the penal provisions of section 31 (see 2 Comp. Laws 1929, § 9801 and note thereto) of the act.

A fair consideration of the purposes of the act, and of the relationship of dealer and salesman therein provided for, leads us to the conclusion that, in order for the dealer to relieve himself from the fraudulent acts of the salesman after his discharge, he must surrender to the commission the salesman's license issued by it, which he has retained in his possession.

It follows that the findings of the trial court should have been amended as proposed by plaintiff, and that the court should have concluded as a matter of law that plaintiff was entitled to a judgment in the amount claimed by him. The judgment entered is reversed and set aside, with costs to plaintiff. The amendments will be treated as now made, and the case remanded to the circuit court with direction to enter a judgment for the plaintiff for the sum of $2,700 and interest thereon from the 16th day of November, 1926, and costs to be taxed.

BUTZEL, C. J., and WIEST, CLARK, MCDONALD, POTTER, NORTH, and FEAD, JJ., concurred.