TIMMERMAN v. BULTMAN.

1. APPEAL AND ERROR—PLAINTIFF'S EVIDENCE TO BE TAKEN MOST FAVORABLY IN REVIEWING DIRECTED VERDICT FOR DEFENDANT.
   In reviewing a verdict directed for defendant at the close of plaintiffs' proofs, the Supreme Court must accept the testimony and the legitimate inferences to be drawn from the established facts most favorable to plaintiffs.

2. PRINCIPAL AND AGENT—BROKERS—EVIDENCE—SUFFICIENCY.
   In an action against a broker and its agent on a fraudulent stock transaction, evidence *held*, sufficient to justify the inference that the relation of principal and agent existed, that the principal was a broker engaged in selling stocks and bonds, that the agent was discharged by the principal after the transaction involved occurred, and that the principal was protected from the acts of the agent by the bond of a surety company, although the better practice would have been to introduce certified copies of the files of the securities commission to establish said facts, if true.

3. SAME—UNDISCLOSED PRINCIPAL MAY BE HELD LIABLE ALTHOUGH NOT KNOWN WHEN CONTRACT MADE.
   An undisclosed principal, when subsequently discovered, may, at the election of the other party, if exercised within

a reasonable time, be held liable upon all simple non-negotiable contracts made in his behalf by his duly authorized agent, although the contract was originally made with the agent in entire ignorance of the principal.

4. TRIAL—DIRECTED VERDICT ERROR WHERE PROOF SUFFICIENT TO TAKE CASE TO JURY.

Where there was proof sufficient to take plaintiffs' case to the jury, a directed verdict in favor of defendant was error, although there were probably more convincing and satisfactory proofs available.

Error to Ottawa; Cross (Orien S.), J.    Submitted April 4, 1928.    (Docket No. 30, Calendar No. 33,557.) Decided July 24, 1928.

Assumpsit by Benjamin Timmerman and another against Richard Bultman, Henry L. Doherty & Company, and the Fidelity & Deposit Company of Maryland for an amount due on a fraudulent sale of corporate stock.    Judgment for defendants on a directed verdict.    Plaintiffs bring error.    Affirmed as to the Fidelity & Deposit Company of Maryland, and reversed as to Henry L. Doherty & Company.

*Fred T. Miles* and *Dilley, Souter & Dilley,* for appellants.

*Diekema, Kollen & Ten Cate,* for appellee.

FELLOWS, J.    As we understand the records, the writ of error in *Timmerman* v. *Indemnity Co., ante,* 338, and the writ in the instant case review the result of one trial in one lawsuit.    The facts pertaining to the transaction so far as the Hartford company is concerned were there stated.    But few additional facts need be stated.    Plaintiffs here insist that they established on the trial sufficient to take to the jury the question of the agency of Bultman for Henry L. Doherty & Company, the claim being that he was the

agent for said company which was his undisclosed principal, and that the trial judge erred in directing a verdict for that company upon the record as made. As the verdict was directed against plaintiffs, we must, of course, upon this record accept the testimony and the legitimate inferences to be drawn from the established facts most favorable to plaintiffs.    Indeed, no testimony was offered by defendant and the verdict was directed at the close of plaintiffs' proofs.    The plaintiffs when they dealt with Bultman and turned over this stock to him to sell, did not know that he was agent for the Doherty company.    If that company is held it must be on the theory that Bultman was its agent as matter of fact and that it was the undisclosed principal.    There was considerable correspondence between plaintiffs' attorney and the company, some of which appears in the record.    On May 23, 1927, the company wired plaintiffs' attorney for details of clients' deals with Bultman.    On that day plaintiffs' attorney wrote the company enumerating various transactions of Bultman with different parties, all involving stock and bond deals.    On May 25th, the company wrote:

"We are in receipt of your letter of May 23d showing the transactions of Richard Bultman.    Mr. Bultman was discharged as a salesman by us on November 1, 1926, as his production as a salesman did not warrant continuing him in our employ.

"If you will furnish us with complete information covering the transactions of December 8, 1925, with Gerrit Bekman, and October 4, 1926, with Benjamin and Jennie Timmerman, we will immediately take this up with the bonding company who carried Mr. Bultman's bond; in order to arrange for a settlement with these clients.    It will be necessary that these clients file affidavits setting forth their transactions together with the amount of loss sustained by them.    Upon receipt of these affidavits we will immediately file same with the bonding company.

"The transactions of November 16, 1926, with Henry

Timmerman and April 22, 1927, with Mrs. Gilmour are transactions which took place after Mr. Bultman was discharged from our employ."

We think it was a legitimate inference from what appears in the correspondence and that a jury would be justified in finding that Bultman was agent for the company, that the company was a broker engaged in selling stocks and bonds in this State, as the only transactions mentioned were stock and bond sales, that he was discharged by the company after the transaction here involved, that the company was protected from the acts of Bultman as agent by the bond of a surety company to whom it would look for adjustment of loss. A jury would be justified in inferring and finding these facts from what was before them, but it is passing strange that certified copies of the files of the Michigan securities commission were not obtained and introduced in evidence to establish these facts or most of them beyond cavil if they were true.

It is stressed by counsel for the company that the plaintiffs dealt without knowledge of the agency and with no reliance on the financial responsibility of the company. But it must be patent that had plaintiffs known of the agency, the doctrine of undisclosed principal would not be applicable. The theory of the doctrine is that the principal is not known, is not disclosed. The rule is thus stated in 2 C. J. p. 840:

"Undisclosed Principal. In General. As has been seen in another connection, an agent who enters into contractual relations on behalf of an undisclosed principal may be held liable by the person with whom he deals, as though he himself were in fact the principal. The liability of the agent is not, however, exclusive, for, although the third person extended credit to the agent in ignorance of the fact that the latter was acting in a representative capacity, he may elect to hold the undisclosed principal when discovered, it being a firmly established rule that an undisclosed principal is bound by executory simple contracts made

by the agent, and by acts done by the agent in relation thereto, within the scope of his authority and in the course of his employment, although the contract purports to be the individual contract of the agent, and although the third person had previously refused to enter into contractual relations with the principal.

"This rule applies only where the person sought to be held as undisclosed principal was not known to be a party to the transaction at the time thereof, but it is not dependent upon the diligence of the third person in discovering the fact of the concealed agency."

And in 2 Mechem on Agency (2d Ed.), § 1731, it is said:

"Notwithstanding these objections, the considerations making for the principal's liability have generally prevailed under English law, though not under the Continental systems, and it is unquestionably the general rule of our law that an undisclosed principal, when subsequently discovered, may, at the election of the other party, if exercised within a reasonable time, be held liable upon all simple non-negotiable contracts made in his behalf by his duly authorized agent, although the contract was originally made with the agent in entire ignorance of the principal."

The text is supported by the citation of numerous cases. The doctrine of the text finds support in this State in *Frohlich* v. *Carroll*, 127 Mich. 561; *Hillman* v. *Hulett*, 149 Mich. 289; *Schweyer* v. *Jones*, 152 Mich. 241.

In *Wm. Lindeke Land Co.* v. *Levy*, 76 Minn. 364 (79 N. W. 314), it was said by Mr. Justice Collins, speaking for the court:

"The general rule seems to be well settled that where a simple contract, by parol or in writing, is made by a duly authorized agent, without disclosing his principal, and the other contracting party subsequently discovers the real party, he may abandon his right to look to the agent personally, and may resort to the principal. Parol evidence showing that an additional and unnamed party is also liable on the written instrument in no way alters, varies, or contradicts it.

Such evidence is not admissible for the purpose of showing that the agent who has contracted in his own name is not liable.    When admitted, it simply establishes the liability of another unnamed party."

In *Greenburg* v. *Palmieri*, 71 N. J. Law, 83 (58 Atl. 297), it was held (quoting from the syllabus) :

"Where credit is given to an agent, the fact of agency being unknown at the time, the party giving credit may elect whether he will hold the principal or agent responsible."

See, also, *Maxcy Manfg. Co.* v. *Burnham,* 89 Me. · 538 (36 Atl. 1003, 56 Am. St. Rep. 436) ; *Bryant Lumber Co.* v. *Crist,* 87 Ark. 434 (112 S. W. 965) ; *Coleman* v. *National Bank,* 53 N. Y. 388; *Schendel* v. *Stevenson,* 153 Mass. 351 (26 N. E. 689) ; *Bergtholdt* v. *Porter Bros. Co.,* 114 Cal. 681 (46 Pac. 738) ; *Calnan Construction Co.* v. *Brown,* 110 Iowa, 37 (81 N. W. 163) ; *Burnell* v. *Morrison,* 46 Colo. 533 (105 Pac. 876) ; *Efta* v. *Swanson,* 115 Minn. 373 (132 N. W. 335).

While there were probably more convincing and satisfactory proofs available, we can not say upon this record that there was no proof tending to show that Bultman was the agent for the Doherty company, his undisclosed principal.    There is no testimony in any way connecting Fidelity & Deposit Company with the transaction.    As to it, the judgment will be affirmed; as to Henry L. Doherty & Company, it will be reversed with a new trial and costs of this court.

FEAD, C. J., and NORTH, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.