*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MBK CONSTRUCTORS, INC.,

        Plaintiff/Counterdefendant-
        Appellant,

v

LISA LIPCAMAN and GERDA LIPCAMAN,

        Defendants/Counterplaintiffs-
        Appellees.

UNPUBLISHED
October 29, 2019

No. 344079
Washtenaw Circuit Court
LC No. 15-001232-CH

Before: REDFORD, P.J., and JANSEN and LETICA, JJ.

PER CURIAM.

In this dispute over the unpaid balance on a contract for a substantial home renovation, plaintiff, MBK Constructors, Inc. (MBK), appeals the trial court's orders dismissing its contract, lien, and unjust enrichment claims against defendant, Gerda Lipcaman.[1] The trial court entered a judgment against Lisa Lipcaman, but that judgment is not at issue on appeal.[2] For the reasons explained below, we affirm in part, reverse in part, vacate in part, and remand for further proceedings.

---

[1] We note that the trial court does not appear to have entered an order disposing of any counterclaims. To the extent that the trial court's order dismissing MBK's unjust enrichment claim was not the final order, see MCR 7.203(A)(1); MCR 7.202(6)(a)(i), we treat MBK's appeal as on leave granted. See *Waatti & Sons Electric Co v Dehko*, 230 Mich App 582, 585; 584 NW2d 372 (1998) (determining that, in an untimely appeal as of right, we have the discretion to accept the pleadings as an application for leave to appeal, grant the appeal, and resolve the appealed issues on the merits).

[2] For ease of reference, we refer to the members of the Lipcaman family by their first names.

-1-

## I. BACKGROUND

Gerda, an elderly woman, had two daughters—Lisa and Lori Lipcaman—and had a son who died some years before.

In 2013, Lisa moved into Gerda's home in Ann Arbor, Michigan, to help with Gerda's needs. Gerda was the sole owner of the home. It was determined that Gerda's home should be renovated to provide Gerda with a ground-floor addition that might better serve her needs. Lisa contacted an architect who designed the addition and, in December 2013, Lisa executed a fixed price agreement with MBK to renovate Gerda's home. The agreement listed Lisa as the owner of the home and provided that it was between "Lisa Lipcaman (hereinafter referred to as 'Owner'); and MBK." The initially agreed upon price was $296,969. However, Lisa repeatedly made changes to the work and materials, causing the project cost to increase to approximately $486,500. Although Lisa initially claimed that she made the periodic payments on the project, there was evidence indicating that Lori wired the payments from a bank in France, where she lived.

MBK completed the project in October 2014 and submitted the final bill for approximately $43,500 in December 2014. Lisa did not pay the remaining balance. MBK filed a claim of lien against the property in December 2014 and submitted a demand for arbitration of the dispute, as required under the contract. It listed Lisa as the respondent. The arbitrator returned an award of $95,513.93 against Lisa, which included $39,684.90 for breach of contract, attorney fees of $42,346.77, costs of $986.46, and $12,495.80 for the costs of arbitration. In January 2016, the trial court entered a judgment for $95,513.93 against Lisa.

In December 2015, MBK sued Lisa and Gerda. MBK alleged: (1) a claim of foreclosure on the lien, (2) a breach-of-contract claim, (3) a claim premised on implied contract and its status as a third-party beneficiary of an agreement between Gerda and Lisa concerning the property, and (4) a claim labeled unjust enrichment and collateral estoppel.

During the course of the litigation, MBK discovered that Gerda had granted Lisa a broadly worded power of attorney in 2008. It eventually argued that, because Lisa had the authority to act as Gerda's agent, Gerda was a party to the agreement and a party to the arbitration. Accordingly, it maintained that Gerda was also liable for the arbitration award. MBK later amended its complaint to allege that Lisa contracted with MBK in her own name and as Gerda's express or implied agent.

In May 2017, the trial court entered an order granting Gerda's motion for summary disposition in part and dismissing MBK's contract claim against Gerda without prejudice.[3] The

---

[3] In April 2016, the trial court originally dismissed MBK's contract claim against Gerda because there was no evidence that she was a party to the agreement or that Lisa acted as her agent. However, during the bench trial held on the surviving claims in November 2016, MBK asked the trial court to allow it to present evidence that Lisa was acting as Gerda's agent because it had discovered that Gerda executed a power of attorney appointing Lisa in 2008. The trial court

court determined in relevant part that there was no dispute that Lisa was Gerda's agent because of the power of attorney executed in 2008, which authorized Lisa to enter into contracts on Gerda's behalf and to encumber her real property. It also determined that Lisa could have acted in her own capacity as well as Gerda's agent, and recognized that MBK had presented evidence that Gerda participated in the early negotiations and appeared to endorse Lisa's authority. It rejected the notion that res judicata applied to prevent Gerda from relitigating liability as Lisa's principal. It reasoned that the record was unclear whether Lisa appeared at the arbitration in her individual capacity, as Gerda's representative, or in both capacities when her interests were potentially at odds with Gerda's interests. It pointed out that there was no evidence anyone protected Gerda's interests at the arbitration. It also determined that collateral estoppel and res judicata did not bar consideration of whether Lisa was Gerda's agent or of MBK's contract claim. It nevertheless dismissed the contract claim because the claim was subject to the agreement's arbitration clause. In other words, MBK's contract claim against Gerda, as Lisa's principal, should be arbitrated as required under the contract.

In October 2017, the trial court entered an order dismissing MBK's lien claim with prejudice. It reasoned that Gerda was not bound by the earlier arbitration, as the construction agreement was between Lisa and MBK and Lisa did not act as Gerda's representative, and the lien claim was premised solely on the arbitration award. The trial court subsequently dismissed MBK's unjust-enrichment claim, after MBK conceded at trial that the increased value of Gerda's home did not exceed the amount of the payments made to MBK on the contract.[4]

In May 2018, the trial court also denied MBK's motion for reconsideration of its dismissal of the lien claim, determining that MBK should have pursued a claim that Gerda was bound by the construction agreement during arbitration. It further determined that MBK could not relitigate whether Lisa was a principal or acted as Gerda's agent, and there was no evidence that the parties to the agreement knew about the power of attorney. And it applied judicial estoppel to MBK's position that Lisa was acting as Gerda's agent because it was inconsistent with MBK's position in arbitration that it had an agreement with Lisa. Finally, the trial court concluded it had properly dismissed MBK's lien claim because MBK did not contract with an owner or lessee of the property at issue—namely Gerda—and, for that reason, was not entitled to a lien as a contractor under the Construction Lien Act, MCL 570.1101 *et seq*.

---

reviewed the new evidence and noted that MBK had earlier complained that summary disposition would have been premature because discovery was not yet completed, and postponed the trial to give Gerda's counsel time to prepare to proceed on the contract claim.

[4] MBK's trial counsel informed the trial court on the date set for the bench trial that it was only pursuing its unjust-enrichment claim. Therefore, MBK abandoned its third-party beneficiary claim.

## II. CONTRACT CLAIM

MBK argues that the trial court erred when it dismissed its contract claim because the undisputed evidence showed that Lisa executed the agreement at issue as Gerda's agent. That being so, Gerda was liable for the arbitration award as a matter of law. We disagree.

### A. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. See *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim and may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). In reviewing such a motion, a court considers the pleadings, affidavits, depositions, admissions, and documentary evidence in a light most favorable to the nonmoving party. *Id*. "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ." *Bennett v Detroit Police Chief*, 274 Mich App 307, 317; 732 NW2d 164 (2006). We also review de novo whether the trial court properly applied the common law—such as the common law of agency—to the facts of this case. See *Roberts v Salmi*, 308 Mich App 605, 613; 866 NW2d 460 (2014).

### B. THE AGENCY DISPUTE

In the broadest sense, an agent is any person who acts for or represents another by the other's authority. See *Saums v Parfet*, 270 Mich 165, 171; 258 NW 235 (1935). The existence of an agency relationship must be determined by the relations of the parties, as determined by their agreements or acts. *Id*. A fundamental characteristic of an agent—as opposed to a servant—is that an agent generally acts to bring about, modify, affect, accept performance of, or terminate contractual obligations. *Id*. at 172.

In this case, MBK asserted that Gerda expressly granted Lisa the authority to contract on her behalf and to encumber her real property in a 2008 power of attorney. The trial court agreed that the durable power of attorney was dispositive as to whether Lisa was acting on Gerda's behalf.

However, the mere fact that Lisa had the authority to act on Gerda's behalf did not by itself establish that she was *in fact* acting on Gerda's behalf when she entered into the agreement. Our Supreme Court long ago explained that it was "not enough that the person executing an instrument have power as agent to bind a third person; he must, in fact, make it the obligation of that person in terms, in order to bind him." *Detroit v Jackson*, 1 Doug 106, 115 (1843). Indeed, the agent might even describe himself or herself as an agent in the agreement without binding his or her principal to the agreement:

> If, by the terms of the agreement, a party describing himself as agent, undertakes to do certain things, the mere addition of the word agent, or indeed any other designation which he may add to his name, will not make it the contract of his principal. Such addition will be regarded as mere description; and will not

-4-

have the effect of binding a third person, who is not, in form, made a party to the instrument. [*Id*.]

In ascertaining whether an agent's execution of an agreement binds the agent's principal, courts must examine the agreement as a whole to determine whether the agreement purports to be an obligation of the principal. *Id*. at 115-116. Traditionally, before a court would entertain parol evidence on the identity of the actual parties to an agreement, there must have been something on the face of the agreement that suggested a doubt about the identity of the party to be bound. See *Armstrong v Andrews*, 109 Mich 537, 540; 67 NW 567 (1896).

Since the decision in *Armstrong*, our Supreme Court has held that an undisclosed principal may be held liable on a written instrument executed by his or her duly authorized agent and that the undisclosed principal's identity as the true party may be established by parol evidence. See *Timmerman v Bultman*, 243 Mich 344, 348-349; 220 NW 754 (1928).[5] In such cases, the other party may look to the agent or the principal for satisfaction. *Id*. Nevertheless, a party seeking to hold an agent's principal liable on a contract must still establish that the agent was in fact acting for his or her principal before the principal may be bound. *Id*. at 347-348 (recognizing that the agent must enter into the agreement on behalf of the undisclosed principal). It is inadequate to show that the agent generally had the authority to bind the principal, or even that the agent acted for the benefit of the principal; instead, the party seeking to enforce the agreement must establish that the agent acted on behalf of the principal and not on his or her own behalf. See 2 Restatement Agency, 2d, § 186, p 420 (stating that the agent must have acted on his or her principal's account), comment *c*, pp 421-422 (noting that it is not enough to show that the agent acted generally for his or her principal's benefit; the third party must show that the agent acted as an agent in a matter entrusted to him or her as an agent); 2 Restatement Agency, 2d, § 199, p 437 ("An undisclosed principal who authorizes an agent to make a particular contract on his account and in his business is not liable upon such contract if the agent makes the very contract authorized but does not intend to act on account of the principal."); 2 Restatement Agency, 3d, §6.03, pp 39-40 (stating that an undisclosed principal becomes liable as a party to a contract if his or her agent made a contract on behalf of the undisclosed principal).

Whether the undisclosed principal was bound by the agent's act depends on the agent's intent, which is normally a question of fact. See 2 Restatement Agency, 3d, § 6.03, comment *c*, p 42. The same is true in cases where the principal has acted in such a way as to justify a reasonable third party in believing that the agent had the authority to act (i.e., when the agent acted with apparent authority); the party seeking to hold the principal liable must show that the agent acted as the principal's agent in the transaction at issue. See *Central Wholesale Co v Sefa*, 351 Mich 17, 26; 87 NW2d 94 (1957); *Mossman v Millenbach Motor Sales*, 284 Mich 562, 566-

---

[5] Our Supreme Court also indicated that parol evidence showing that there was an additional unnamed party does not violate the parol-evidence rule because the parol evidence does not alter, vary, or contradict the terms of the agreement. See *Timmerman*, 243 Mich at 348-349. Consequently, Gerda's argument that the parol-evidence rule bars MBK from showing that Gerda was a party to the contract is misplaced.

-5-

569; 280 NW 50 (1938) (discussing apparent authority generally, noting that a party to an agreement may rely on an agent's apparent authority to act on the principal's behalf, and stating that the evidence showed that the agent had the apparent authority to enter into the transaction on behalf of the corporation); *Hertz Corp v Volvo Truck Corp*, 210 Mich App 243, 247; 533 NW2d 15 (1995) (recognizing that the evidence had to show that the person with apparent authority actually acted as an agent for the principal and not on his own behalf).

Here, at no point in the construction agreement, did Lisa or MBK indicate that Gerda was a party obligated under the agreement. The header on the contract stated that the "Owner" was Lisa Lipcaman, and it listed her address as the address for the home at issue. The agreement also provided that it was "made and entered into on this 3rd day of December, 2013, by and between, Lisa Lipcaman (hereinafter referred to as "Owner"); and MBK Constructors, Inc., a Michigan Corporation (hereinafter referred to as "Contractor")." Finally, Michael Hagen signed the agreement as the President of MBK, and Lisa Lipcaman signed it without any designation. As such, the agreement did not on its face purport to bind or obligate Gerda in any way. Moreover, the mere fact that Lisa had the authority to bind Gerda did not establish that Lisa acted on behalf of Gerda. See *Armstrong*, 109 Mich at 540; *Detroit*, 1 Doug at 115-116. And that Lisa may have acted for Gerda's benefit was also not dispositive. See *Landyskowski v Lark*, 108 Mich 500, 502; 66 NW 371 (1896) ("Agents may bind themselves by their contracts, notwithstanding it be known to both parties it is not for their benefit directly, but is for the benefit of another."). The trial court, therefore, erred to the extent that it determined that Lisa must have entered into the agreement on Gerda's behalf on the sole ground that Lisa had the authority to act as Gerda's agent under the 2008 power of attorney.

Although the agreement itself did not establish that Lisa was acting in any capacity other than on her own behalf, there was some evidence that Lisa might have entered into the agreement on behalf of Gerda. Gerda testified at her deposition that Lisa helped her put the house together and stated that Gerda herself paid for all the improvements. Gerda also testified that she gave them permission to do the improvements. This testimony suggested that Gerda understood that Lisa was to enter into the agreement on her behalf and run the project for her, which gives rise to an inference that Lisa acted in accord with Gerda's wishes.

However, Gerda, also seemed confused about the events at issue. Gerda testified that she did not sign any documents giving Lisa authority to act on her behalf even though it was clear that she had given Lisa power of attorney in 2008. She stated that she did not know how much she paid for the improvements and indicated that she paid with checks. But MBK's own administrative assistant indicated that Gerda did not pay the invoices; instead, Lisa instructed MBK to invoice Lori, and Lori apparently wired the funds from a bank in France. When asked about the wired funds, Gerda stated that she did not think she would do that because her bank was close by; and she asserted that she paid for the project because she "must have." Gerda also stated that she did not know Mike Hagen, who owned MBK and ran the renovation project. Moreover, Gerda had no input on the construction project because she was not there during the renovations as she was hospitalized for a year. And, even though she earlier stated that she gave permission for the renovations, she also testified that she did not ask for or want specific renovations. Gerda also seemed to confuse the renovations at issue with earlier renovations made by her deceased son. Finally, she seemed confused by changes that she learned were made to the house that she did not want made; she testified that "they decided it needed to be done so

-6-

they just went ahead and did it." Taken as a whole, Gerda's testimony strongly indicates she had no real understanding of the events at issue and did not know whether Lisa acted on her own behalf when she executed the agreement at issue or acted as Gerda's agent and intended to bind Gerda as a party to the agreement.

MBK's owner, Hagen, averred that Lisa told him that she was signing the agreement on Gerda's behalf and that he expected to be paid by Gerda. However, Hagan testified at his deposition that he knew that Gerda owned the property. He stated that he learned that Gerda owned the house when he asked who would sign the contract and be responsible for it. He also stated that Lisa signed the agreement, and he agreed that he knew that his contract was with Lisa. When asked if he ever had any contact with Gerda, Hagen stated "No." Similarly, Lisa averred that she executed the contract with MBK in her own name.

Given the totality of the proposed testimony and evidence, there was arguably a question of fact as to whether Lisa executed the agreement at issue in her own name, or executed it in her capacity as an agent for Gerda and with the intent to bind Gerda. Consequently, the trial court erred to the extent that it determined that there was no question of fact as to that issue. See *Barnard Mfg*, 285 Mich App at 369. However, the trial court ultimately did not err when it dismissed MBK's contract claim against Gerda because, if valid, it was subject to an arbitration agreement.

### C. AGENCY WAS A MATTER FOR ARBITRATION

Upon a showing that there is an agreement to arbitrate, a trial court must generally "proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate." MCL 691.1687(1)(b); see also MCR 3.602(B)(2). An agreement to arbitrate is "valid, enforceable, and irrevocable except on a ground that exists at law or in equity for the revocation of a contract." MCL 691.1686(1). If the court orders arbitration, it must stay the judicial proceeding that involves the claim subject to arbitration. It may, however, limit the stay to the particular claim to be arbitrated, if that claim is severable. MCL 691.1687(7); MCR 3.602(C).

The Uniform Arbitration Act, MCL 691.1681 *et seq.*, provides that it is for the trial court to decide as a preliminary matter whether the agreement to arbitrate is subject to revocation under traditional principles of law or equity. See MCL 691.1686(1). It is also generally for the court to decide "whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." MCL 691.1686(2). It is for the arbitrator, by contrast, to decide "whether a condition precedent to arbitrability"—such as, a statute of limitations defense or claim of waiver—"has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable." MCL 691.1686(3). Although the Uniform Arbitration Act provides that courts should generally decide whether the agreement to arbitrate exists and whether the agreement applies to a particular controversy, the Legislature also provided that the parties "may waive or . . . vary the effect of the requirements of this act to the extent permitted by law." MCL 691.1684(1). The parties may not waive or vary the effect of MCL 691.1686(1) or MCL 691.1687, which involve whether the agreement can be revoked under traditional common law principles, but they may vary MCL 691.1686(2), which assigns the court the task of determining

whether the agreement to arbitrate exists and whether the controversy is subject to the agreement to arbitrate. See MCL 691.1684(2)(a) and (3).

An agreement to waive or vary the terms of the statute by having the arbitrator decide the gateway issue of arbitrability is referred to as a "delegation provision" and it is an "antecedent agreement that the party seeking arbitration" asks the court to enforce. *Rent-A-Center, West, Inc v Jackson*, 561 US 63, 70; 130 S Ct 2772; 177 L Ed 2d 403 (2010). A delegation provision is "valid, enforceable, and irrevocable except on a ground that exists at law or in equity for the revocation of a contract." MCL 691.1686(1); *Rent-A-Center*, 561 US at 70. Nevertheless, because there is a presumption that the parties to an arbitration agreement intended the court to determine questions of arbitrability, courts will not assume otherwise; the parties must manifest their clear and unmistakable intent to delegate the issue of arbitrability to the arbitrator. See *Howsam v Dean Witter Reynolds, Inc*, 537 US 79, 83; 123 S Ct 588; 154 L Ed 2d 491 (2002) ("The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.' " (citations omitted, alteration in original)).

The agreement at issue provided that the parties would resolve any controversy or claim arising out of or related to the agreement over a certain threshold dollar amount under the Construction Industry Mediation Rules of the American Arbitration Association. Courts have uniformly held that the incorporation of rules that empower the arbitrator to decide the gateway issue of arbitrability—such as the American Arbitration Association's rules—constitute clear and unmistakable evidence of the parties' intent to allow the arbitrator to decide the threshold issue whether the agreement applies. See *Belnap v Iasis Healthcare*, 844 F3d 1272, 1283-1284 (CA 10, 2017); *Oracle America, Inc v Myriad Group, AG*, 724 F3d 1069, 1074 (CA 9, 2013) (collecting cases and stating that "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's . . . arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability").

Thus, the parties' incorporation of the American Arbitration Association's rules in the agreement constituted clear and unmistakable evidence of the parties' intent to have the arbitrator decide arbitrability of the claims at issue. See *Howsam*, 537 US at 83. Accordingly, whether Gerda was a party to the agreement as Lisa's principal was a question of fact for the arbitrator, not the trial court.

## D. RES JUDICATA AND ESTOPPEL

The parties also variously assert that the doctrines of res judicata, collateral estoppel, and judicial estoppel apply in one way or another to resolve the contract dispute as a matter of law. We conclude that these doctrines are inapplicable here.

MBK asserts that Gerda is absolutely bound by the earlier arbitration and cannot now relitigate her liability for the judgment under the doctrines of res judicata and collateral estoppel.

The doctrine of res judicata applies to prevent a party from pursuing a subsequent action when an earlier action was decided on the merits, the matter contested in the second action was or could have been resolved in the first, and both actions involve the same parties or their privies.

See *Verbrugghe v Select Specialty Hosp-Macomb Co, Inc*, 279 Mich App 741, 744; 760 NW2d 583 (2008). Similarly, the doctrine of collateral estoppel applies to prevent "relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in that prior proceeding." *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 528-529; 866 NW2d 817 (2014).

As already discussed, there was a question of fact as to whether Lisa executed the agreement at issue on her own behalf or as an agent for Gerda. Consequently, there was a question of fact as to whether Gerda was even a party to the agreement. Additionally, as already explained, the mere fact that Lisa had the authority to take actions as an agent for Gerda does not mean that she acted as an agent for Gerda with regard to every action she took. Stated another way, the fact that Lisa participated in the arbitration did not establish that she did so as an agent for Gerda. And there is no record evidence that Lisa appeared at the arbitration as Gerda's agent and participated in it as Gerda's representative. Accordingly, on this record, it does not appear that the arbitration involved Gerda such that she would be bound by the arbitrator's decision in that case. See *Rental Props Owners Ass'n*, 308 Mich App at 528-529; *Verbrugghe*, 279 Mich App at 744.

Gerda asserts that the doctrine of judicial estoppel applies to preclude MBK from asserting that she was a party to the agreement at issue. Specifically, she asserts that, during arbitration, MBK maintained that Lisa made the agreement in her own name and was personally liable; thus, Gerda argues that the doctrine of judicial estoppel precludes MBK from now asserting that Lisa acted as Gerda's agent.

The purpose of the doctrine of judicial estoppel is to impede litigants who would otherwise play fast and loose with the legal system. See *Paschke v Retool Indus*, 445 Mich 502, 509; 519 NW2d 441 (1994). The doctrine applies when a party has successfully and unequivocally asserted a position in a prior proceeding. *Id*.

It is not clear on this record that MBK unequivocally asserted before the arbitrator that Lisa executed the agreement at issue on her own behalf, and not as Gerda's agent, or in both her individual capacity and as Gerda's agent. MBK's position in the present litigation is not on its face inconsistent with the arbitration award. Because it is not clear that MBK successfully asserted an inconsistent position before the arbitrator, the doctrine of judicial estoppel cannot be applied to preclude MBK from asserting that Lisa acted as Gerda's agent. See *id*. at 510 (stating that the party to be estopped must have successfully asserted an inconsistent position in the earlier litigation). Therefore, to the extent that the successor judge amended the earlier decision to dismiss MBK's contract claim on the ground that it was also barred by judicial estoppel, it erred.

Although the trial court dismissed MBK's claim, it did so without prejudice so that MBK could pursue arbitration, as required under the agreement. Because we agree that MBK must first arbitrate whether Gerda was party to the agreement at issue, we conclude that there is no error that warrants reversing that order.

## III.  LIEN CLAIM

MBK argues that the trial court erred when it dismissed its lien claim.  MBK contends that the trial court erred when it determined that MBK did not have a valid construction lien on Gerda's real property under the Construction Lien Act.  Specifically, MBK argues that it was entitled to a lien because it provided improvements to Gerda's property at the request of her agent, Lisa.

As an initial matter, MBK also argues that the trial court erred when it dismissed its lien claim because it did not provide proper notice to Gerda, a necessary party to the arbitration, and because the construction agreement with Lisa barred its lien.  However, in its original decision, the trial court, which had already ruled that the arbitration award did not apply to Gerda, dismissed MBK's lien claim after concluding that it rested solely on that award.  In its opinion denying reconsideration on MBK's lien claim, the trial court noted that it had dismissed MBK's contract claim on the ground that there was no contract between Gerda and MBK in May 2016, and it amended its decision to dismiss the lien claim on the ground that MBK failed to establish it was a contractor within the meaning of the Construction Lien Act as it did not have an agreement with an owner or lessee.  Thus, the question we address on appeal is whether MBK could meet the requirements for a valid lien as a contractor who provided an improvement under a contract with an owner or lessee.

### A.  STANDARD OF REVIEW

Again, this Court reviews de novo a trial court's decision on a motion for summary disposition.  See *Barnard Mfg*, 285 Mich App at 369.  This Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes.  See *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012).

### B.  ANALYSIS

The trial court dismissed MBK's claim because it determined that MBK could not establish that it was a contractor within the meaning of the act.  The trial court erred in part.

### 1.  MBK'S LIEN UNDER MCL 570.1107(3)

The trial court was correct that MBK failed to establish a question of fact as to whether it might be entitled to a limited lien under MCL 570.1107(3).

This statute provides: "Each contractor . . . who provides an improvement to real property to which the person contracting for the improvement had no legal title has a construction lien upon the improvement for which the contractor . . . provided labor, material, or equipment."  Thus, to establish the right to a lien under this section, MBK had to be able to prove that it was a contractor within the meaning of MCL 570.1103(5) and that it provided an improvement to real property "to which the person contracting for the improvement had no legal title."  MCL 570.1107(3).  It is evident that the lien provision stated under MCL 570.1107(3) could not apply if MBK had a contract with Gerda because it was undisputed that Gerda *had* legal title to the property at issue.  As such, if this lien provision applied at all, it would have to apply because MBK had an agreement with Lisa in her individual capacity.  Nevertheless, MBK would still

-10-

have to demonstrate that it was a "contractor" who provided an improvement to the property in order to be entitled to a lien under MCL 570.1107(3).

A contractor is defined to be "a person who, pursuant to a contract with the owner or lessee of real property, provides an improvement to real property." MCL 570.1103(5). Accordingly, MBK had to present evidence that it provided an improvement to the property at issue under the authority of a contract with an "owner or lessee" of the real property—it is not enough that MBK improved the real property at issue and did so under a contract with someone other than an owner or lessee. See MCL 570.1107(3); MCL 570.1103(5). The Construction Lien Act defines an owner as a "person holding a fee interest in real property or an equitable interest arising out of a land contract." MCL 570.1105(3). It was undisputed that Lisa did not have a fee interest in the property at issue. As such, there was no question of fact that she was not an owner. A lessee is defined under the act to be "a person, other than the owner, who holds an interest, other than a security interest, in real property." MCL 570.1105(1). Accordingly, MBK had to be able to show that Lisa was not an owner, but otherwise had an interest in the property other than a security interest.

Before the trial court, MBK tried to argue that Lisa had some sort of arrangement with Gerda that amounted to a tenancy at will or at sufferance. However, MBK failed to present any evidence that Lisa had a formal arrangement with Gerda that amounted to a tenancy. There was no evidence that Lisa came "rightfully into possession of land by permission of the owner and continue[d] to occupy the same after the time for which, by such permission, [she] had the right to hold the same," which would give rise to a tenancy at sufferance. *Felt v Methodist Ed Advance*, 251 Mich 512, 517; 232 NW 178 (1930). Neither was there evidence that Gerda gave Lisa possession of the property for an indefinite period for a specified consideration that would amount to a tenancy at will. See *Gurunian v Grossman*, 331 Mich 412, 418; 49 NW2d 354 (1951) (explaining that possession for an indefinite period by the month creates a tenancy at will). The only evidence tended to suggest that Gerda merely gave Lisa permission to live in the home and that Lisa came to live with Gerda out of concern for Gerda's well-being. Evidence that Gerda gave Lisa permission to reside in the home did not by itself establish that Lisa was a tenant.

Permission to do some acts or series of acts on land amounts to a license that is revocable at will and does not amount to an interest in land. See *Kitchen v Kitchen*, 465 Mich 654, 658-659; 641 NW2d 245 (2002). Even the evidence that Lisa moved into the home to help Gerda with her needs did not—absent more—permit the conclusion that Lisa was a tenant. See, e.g., *De Bruyn Produce Co v Romero*, 202 Mich App 92, 98-103; 508 NW2d 150 (1993) (rejecting the contention that an employer's provision of housing to its workers by itself gave rise to a landlord-tenant relationship, and stating that there must be evidence that the parties intended to create a landlord-tenant relationship).

MBK failed to present evidence that Lisa and Gerda intended to create a landlord-tenant relationship. Thus, the trial court did not err to the extent that it dismissed MBK's lien claim premised on an agreement with Lisa in her individual capacity under MCL 570.1107(3).

## 2. MBK'S LIEN UNDER MCL 570.1107(1)

However, the trial court erred to the extent that it concluded that MBK's lien was invalid as a matter of law under MCL 570.1107(1). Under the Construction Lien Act, a "contractor, subcontractor, supplier, or laborer who provides an improvement to real property has a construction lien upon the interest of the owner or lessee who contracted for the improvement to the real property." MCL 570.1107(1). As already discussed, there is a question of fact as to whether Gerda was a party to the agreement at issue. If Gerda was not a party to that agreement, MBK would not have the right to a construction lien against her interest under MCL 570.1107(1). However, if the arbitrator were to determine that Gerda was a party to that agreement, MBK would have a valid lien against her interest under MCL 570.1107(1). Consequently, the trial court erred to the extent that it determined that MBK could not establish a valid lien under MCL 570.1107(1). See *Barnard Mfg*, 285 Mich App at 369.

We reject MBK's argument that we must liberally construe the Construction Lien Act to permit its lien. Our liberal construction of the Construction Lien Act does not permit us to make the statutory criteria applicable to persons who wish to claim a valid lien out of existence. See *Brown Plumbing & Heating, Inc v Homeowner Constr Lien Recovery Fund*, 442 Mich 179, 185; 500 NW2d 733 (1993) ("While we acknowledge that the liberal construction language of the first sentence applies to the entire act, we nonetheless find that liberality cannot and should not nullify a clear and unambiguous requirement."). The act clearly and unambiguously states—in relevant part—that contractors are entitled to liens. As such, MBK had to prove that it was a contractor within the meaning of the act. This it did not do with regard to a lien under MCL 570.1107(3), but it might be able to prove that it was a contractor under MCL 570.1107(1), if it convinces an arbitrator that Gerda was a party to the construction agreement.

For these reasons, we conclude that the trial court erred in part when it dismissed MBK's lien claim. We affirm the trial court's order to the extent that it dismissed MBK's claim that it had a lien under MCL 570.1107(3), but reverse the trial court's order to the extent that it determined that MBK could not establish a lien under MCL 570.1107(1). We further vacate the trial court's order to the extent that it discharged the lien.

## IV. UNJUST ENRICHMENT

MBK argues that Gerda received a benefit from MBK and that it would be unjust to permit her to retain the benefit without compensating MBK. We disagree.

## A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. See *Barnard Mfg*, 285 Mich App at 369. This Court reviews de novo whether the trial court properly applied the common law. See *Roberts*, 308 Mich App at 612-613.

## B. ANALYSIS

The essential elements of a claim for restitution under a theory of unjust enrichment are the receipt of a benefit by the defendant and the benefit is inequitable for the defendant to retain. See *Mich Ed Employees Mut Ins Co v Morris*, 460 Mich 180, 198; 596 NW2d 142 (1999). In order to establish its right to relief, MBK had to establish both the nature of the transaction and the character of the liability arising from the transaction. *Id*. at 198-199.

As our Supreme Court recently explained, the remedy for unjust enrichment is restitution, and restitution does not involve compensatory damages; rather, it seeks to restore a party who yielded excessive and unjust benefits to his or her rightful position. See *Wright v Genesee Co*, ___ Mich ___, ___; ___ NW2d ___ (2019) (Docket No. 156579); slip op at 5. The primary consideration is whether equity demands that the recipient of the benefit make restitution. See *Tkachik v Mandeville*, 487 Mich 38, 49; 790 NW2d 260 (2010). Indeed, the mere receipt of a benefit is not enough to compel restitution: a person is "liable to pay" for a benefit received "only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." *Estate of McCallum*, 153 Mich App 328, 335; 395 NW2d 258 (1986).

In this case, MBK argued that Gerda had been unjustly enriched to the extent that it was not paid the final installment on its construction contract—that is, MBK felt that it was unjust that it did not get the benefit of its bargain. But that is not the proper measure of restitution. Rather, restitution is restorative and depends on the equities between the person who conveyed a benefit and the person who received the benefit. *Estate of McCallum*, 153 Mich App at 335. As our Supreme Court has explained, the equities surrounding a claim for restitution may terminate or diminish a party's right to restitution. See *Moritz v Horsman*, 305 Mich 627, 635; 9 NW2d 868 (1943). For example, as between an innocent owner of land and a party who innocently improved the land under color of title, our Supreme Court has stated that the "measure of such compensation is not the amount of the expenditures on the property but the amount the land has been enhanced by reason of the repairs and improvements made upon it." *Pakulski v Ludwiczewski*, 291 Mich 502, 511; 289 NW 231 (1939). Our Supreme Court has also held that an innocent improver of land may be entitled to the reasonable value of the improvements, but that the value should be reduced by any contributions to the improvement made by the defendant or a third party. See *Ollig v Eagles*, 347 Mich 49, 64-65; 78 NW2d 553 (1956).

MBK further suggests that it would be entitled to its attorney fees as a form of restitution under its claim that Gerda was unjustly enriched. Michigan follows the American rule with respect to the payment of attorney fees; thus, MBK was responsible for the payment of its own attorney fees unless a statute, court rule, or contractual agreement provided otherwise. See *Pransky v Falcon Group, Inc*, 311 Mich App 164, 193-194; 874 NW2d 367 (2015). MBK did not identify any statute or court rule that provides that the defendant to a claim for unjust enrichment must pay the prevailing party's attorney fees. Instead, MBK cites authorities where the prevailing party was entitled to its attorney fees under the Construction Lien Act. As already discussed, MBK may be able to establish a valid lien claim under that act, but it has not yet done so. And, in any event, it does not follow that MBK would be entitled to its attorney fees associated with its unjust-enrichment claim.

In this case, the evidence showed that Gerda received the benefit of extensive improvements to her home. But there was also evidence that Gerda did not want her home improved to the extent that it had been improved and was upset by some of the changes. There was evidence too that Lisa caused the project to balloon out of proportion to its original specifications without any input or control by Gerda. The evidence demonstrated that MBK dealt with Lisa and allowed her to expand the project dramatically even though there was evidence that any increase in the value of the home would not cover the cost of the improvements. Indeed, MBK's trial counsel candidly admitted that MBK overbuilt the home and agreed that it was undisputed that any increase in the value of the home was more than offset by the payments actually made to MBK. Under these circumstances, MBK could not establish that—as between it and Gerda—Gerda received a benefit for which equity demanded that she pay restitution to MBK; MBK may not have received the benefit of its bargain, but it received far more than the value of the benefit conferred on Gerda. See *Ollig*, 347 Mich at 64-65; *Pakulski*, 291 Mich at 511.

The trial court did not err when it determined that, under the undisputed facts, MBK could not establish a right to restitution from Gerda.

## V. CONCLUSION

Because we find no reversible error in the trial court's decision to dismiss its contract claim without prejudice so that MBK could pursue arbitration, we affirm the trial court's May 16, 2017 order. As for the trial court's October 18, 2017 order, we affirm to the extent that the trial court dismissed the claim on the theory that MBK could establish a lien under MCL 570.1107(3), but reverse to the extent that the trial court determined that MBK could not establish a lien as a matter of law under MCL 570.1107(1). We further vacate that order to the extent that it discharged MBK's lien. Finally, we affirm the trial court's May 10, 2018 order dismissing MBK's unjust-enrichment claim.

Affirmed in part, reversed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. We further order that no party may tax their costs. See MCR 7.219(A).

/s/ James Robert Redford
/s/ Kathleen Jansen
/s/ Anica Letica

-14-