*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TSP SERVICES, INC., doing business as TSP
ENVIRONMENTAL,

        Plaintiff/Counterdefendant-Appellant,

v

NATIONAL-STANDARD, LLC, DW-NATIONAL
STANDARD-NILES, LLC, doing business as
NATIONAL-STANDARD LLC,

        Defendants/Cross-Defendants-
        Appellees,

and

NATIONAL-STANDARD COMPANY,

        Defendant/Cross-Defendant,

and

ENVIRONMENTAL DEMOLITION GROUP, LLC,

        Defendant/Counterplaintiff/Cross-
        Plaintiff.

UNPUBLISHED
May 12, 2022

No. 356729
Berrien Circuit Court
LC No. 16-000018-CB

Before: GLEICHER, C.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

        Plaintiff, TSP Services, Inc. (TSP) appeals by right the trial court's order granting summary disposition in favor of defendant DW-National Standard-Niles, LLC (DW-National Standard), and denying TSP's request to clarify the judgment entered after arbitration. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

### A. THE ENTITIES AT ISSUE

TSP is a Michigan corporation that provides demolition, reclamation, and remediation services for owners of real property, specializing in the remediation of environmental impacts, including asbestos remediation. DW-National Standard is a Delaware limited liability company, as is defendant National-Standard, LLC (National-Standard). Both defendants are owned by the same parent, The HEICO Companies (HEICO). Jeremy Steele testified at the arbitration hearing that he was a vice president and general counsel with the HEICO group of companies. Steele stated that DW-National Standard was part of the "Wire Group division" of HEICO. DW-National Standard began conducting business in Michigan in March 2010. It owned and operated a plant in Niles, Michigan—known as City Center Complex (the Niles Complex). Steele testified that National-Standard was a legacy entity that did not operate any businesses. National-Standard existed only to hold certain real property assets, including the real property at issue in this case. Steele testified specifically that the Niles Complex was owned by National-Standard, not by DW-National Standard.

On August 6, 2013, National-Standard applied to the Michigan Department of Licensing and Regulatory Affairs (LARA) for a certificate of withdrawal, stating that it no longer conducted business in Michigan. On the same day, DW-National Standard filed a certificate of assumed name stating that it would conduct business in Michigan under the name National-Standard, LLC.

### B. THE DEMOLITION PROJECT

Ronald Swan of TSP testified that the Niles Complex was roughly 10 acres in size and had 500,000 square feet of buildings. The buildings on the property ranged from an office building to heavy-duty industrial buildings. The heavy-duty industrial buildings had substantial amounts of steel in their construction.

Steele testified that after the last tenant vacated the Niles Complex, National-Standard decided to demolish the complex and provide a recreational easement to the city for a park. He indicated that National-Standard was interested in doing so because the buildings had fallen into disrepair and the demolition would reduce the company's exposure to liability.

Thomas Moran testified that he was the former director of operations for National-Standard in Michigan. In that position, he was responsible for the management of the properties owned by National-Standard in Michigan. He began managing the Niles Complex in 2005. Moran testified that in 2012, a company named Regal Recycling (Regal) approached National-Standard suggesting that it could demolish the Niles Complex at no cost to National-Standard; Moran assumed that Regal intended to profit from selling the steel reclaimed from the demolition project. Although the initial proposal was that the remediation and demolition would be done at no cost, the additional cost of services required by the city of Niles resulted in a quote from Regal of $478,000. Moran testified that when his contact person at Regal moved to TSP, National-Standard began negotiating remediation with TSP instead of Regal.

In August 2013, TSP submitted a proposal for asbestos remediation and demolition of all structures at the Niles Complex. The proposal also included grading, backfilling, and seeding the

land.  TSP's quoted amount was $414,950.  The first page of the proposal reflected that it was directed to "National Standard, L.L.C."  The ninth (and last) page of the proposal included a section entitled "Acceptance."  The Acceptance of the proposal was signed on August 30, 2013 (the remediation agreement); the signature lines of the Acceptance (which were part of TSP's proposal) identified the contracting parties as TSP and "National Standard Co."  Moran testified that the parties did not discuss the issue of steel reclamation during the negotiations relating to the proposal, but he understood from previous negotiations that the steel to be reclaimed would have significant value.  In January 2014, DW-National Standard began paying TSP the installment payments due under the remediation agreement.

Steele testified that in 2014, disputes arose about the project after several months of delays.  Specifically, TSP complained that steel prices had declined during the period of the delays.  TSP proposed an adjustment to the contract price to cover additional unanticipated remediation costs and to reflect the drop in the price of steel.  The requested adjustment was declined.  Thereafter, TSP stated that it would only complete the project under protest and with the expectation that it would get the adjustment.  That was not acceptable to Steele, and he suspended the project in March 2015.

## C.  THE CONTRACT DISPUTE

In January 2016, TSP sued "National-Standard, LLC, a Delaware limited liability company," "DW-National Standard-Niles, LLC, d/b/a National-Standard, LLC, a Delaware limited liability company," "National-Standard Company, Inc."[1] (collectively, the National-Standard entities), and a subcontractor with which TSP had contracted to perform certain work.[2]  TSP separately and specifically identified each of these National-Standard entities, while contending that they were all related entities or the same entity.  TSP asserted a claim for breach of contract on the unpaid balance on the original proposal, which was $141,083, and asserted that it was entitled to the value of the steel that it would have reclaimed, as consequential damages.  It also asserted claims relating to its construction lien, and claims of unjust enrichment and promissory estoppel.

In February 2016, TSP entered into an arbitration agreement with "National-Standard, LLC, a Michigan limited liability company."[3]  In February 2017, the arbitrator issued an award.  The arbitrator captioned the award to reflect that the litigation was between TSP and "National-Standard, LLC, a Delaware limited liability company."  The arbitrator awarded TSP $141,083 for the unpaid balance on the contract, $391,809 for the lost value of the steel that would have been

---

[1] The trial court dismissed National-Standard Company from the complaint after the parties stipulated that it no longer existed.

[2] In May 2016, the subcontractor countersued TSP and cross-sued the National-Standard entities.  The trial court later dismissed the subcontractor from the litigation after it settled with TSP and assigned all its rights in its lawsuit and its lien to TSP.  It is not a party to this appeal.

[3] This description misidentified the relevant contracting entity, inasmuch as there is no Michigan limited liability company that is named or doing business as "National-Standard, LLC."

reclaimed, and additional damages for interest and collection costs. The total award was $782,469.05.

In March 2017, National-Standard and DW-National Standard moved to vacate the arbitrator's award, arguing that the arbitrator exceeded his authority when he awarded TSP damages for the lost value of steel. The trial court held a hearing on the motion in May 2017. National-Standard and DW-National Standard argued, in part, that the arbitrator had exceeded his authority because TSP had not completed the demolition and was not entitled to the value of 2,800 tons of steel that remained on the properties. More specifically, they maintained that the arbitrator had only decided the construction lien claim and that the law did not allow such damages. TSP responded that the arbitrator had also decided the breach of contract claim, which included consequential damages. The trial court took the matter under advisement, and in December 2017, issued an opinion holding that National-Standard and DW-National Standard had not shown that the arbitrator committed an error of law. The trial court entered an order confirming the arbitration award and entering judgment on the award in February 2018.

## D. THE NAMING DISPUTE

In August 2018, DW-National Standard moved to be dismissed from the proceedings, on the ground that it was not a proper party. More specifically, it argued that the undisputed evidence showed that it did not own the real property at issue—National-Standard owned it. It also claimed that it was not a party to the remediation agreement between National-Standard and TSP. Further, it contended that it was not a signatory to the arbitration agreement that had resulted in the arbitration award. TSP opposed the motion, arguing in part that the arbitrator had awarded it damages against National-Standard, LLC, which was DW-National Standard's assumed name. It argued as well that the evidence showed that DW-National Standard had entered into the remediation agreement and participated in the arbitration. In October 2018, the trial court denied the motion without prejudice to enable the parties to conduct further discovery on the issue.

National-Standard and DW-National Standard appealed by leave granted the trial court's decision to confirm the arbitration award. This Court issued its opinion in September 2019. See *TSP Servs, Inc v Nat'l-Standard, LLC*, 329 Mich App 615, 617-618; 944 NW2d 148 (2019). It determined that the arbitrator had approved a construction lien in excess of that allowed by law. See *id*. at 622-623. This Court concluded, however, that the arbitrator did not exceed his authority by awarding consequential damages for the lost value of the steel. *Id*. at 620-621. Accordingly, this Court reversed the trial court in part (i.e., its confirmation of the arbitration award to the extent it included a lien exceeding the unpaid balance of the contract), and remanded the case to the trial court to provide relief consistent with its opinion. *Id.* at 625.[4]

---

[4] We note that this Court, in its earlier opinion, referred to defendants "National-Standard, LLC, and DW-National Standard-Niles, LLC" as "collectively, National-Standard," and that it stated that "the parties" had entered into the remediation agreement, that "the parties" had attended arbitration, and that the arbitrator had concluded that "National-Standard breached the contract." *TSP Servs*, 329 Mich App at 619. However, it is clear to us that, in using that language, this Court

-4-

In October 2020, TSP moved the trial court for entry of a revised order confirming the arbitration award. TSP argued that the arbitration award should be revised to show that the award was actually against DW-National Standard, which, it maintained, was the party that had entered into the relevant agreements. TSP cited evidence that National-Standard had asserted that it was no longer conducting business in Michigan before the parties entered into the remediation agreement and that DW-National Standard had begun doing business in Michigan under the assumed name of National-Standard, LLC. It also cited a purchase order in which DW-National Standard had agreed to pay TSP and specifically referred to the remediation agreement.

The trial court held a hearing on the motion in December 2020. After the hearing, the trial court declined to revise the arbitration award to indicate that the award was against DW-National Standard, stating that it would simply follow this Court's order on remand and adjust the amount of the lien. The trial court entered an order confirming the revised arbitration award and entering judgment.

TSP and DW-National Standard filed motions for summary disposition. TSP argued that the undisputed evidence showed that DW-National Standard was the entity that had executed the remediation agreement, albeit under its assumed name. It similarly argued that DW-National Standard had entered into the arbitration agreement under its assumed name and that the arbitrator had referred to DW-National Standard by its assumed name. For these reasons, it asked the trial court to clarify that the entry of judgment against "National-Standard, LLC" referred to DW-National Standard. In contrast, DW-National Standard argued that it was not a party to the remediation agreement, that it did not own the property that was to be remediated, and that it had not engaged in arbitration with TSP. Therefore, none of the claims by TSP applied to it. DW-National Standard also argued in response to TSP's motion that it was too late to revise the arbitration award, and that the evidence showed that it was National-Standard that had entered into the agreement with TSP, that had participated in the arbitration, and against which the arbitrator had entered the award.

The trial court held a hearing on the motions in February 2021. In March 2021, the trial court entered an order denying TSP's motion for summary disposition, granting DW-National Standard's motion for summary disposition, and dismissing DW-National Standard from the case.[5]

This appeal followed.

---

had no reason to anticipate the current dispute regarding nomenclature and the precise identity of the parties to the remediation agreement and arbitration agreement. Therefore, we do not understand this Court's earlier opinion to address or affect our decision with respect to the issues now before us.

[5] This order was a final order that resolved the case, because TSP had received a judgment against National-Standard and the other remaining defendant, DW-National Standard, had been dismissed from the case.

## II. SUMMARY DISPOSITION MOTIONS

This Court reviews de novo a trial court's decision on a motion for summary disposition, *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009), and whether the trial court properly selected, interpreted, and applied the relevant statutes and court rules. See *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012). This Court also reviews de novo whether the trial court properly declined to vacate or modify an arbitration award, *TSP Servs*, 329 Mich App at 619-620, as well as whether the trial court properly interpreted and applied an unambiguous contract, *Conlin v Upton*, 313 Mich App 243, 254; 881 NW2d 511 (2015).

TSP argues that the trial court should have granted its motion for summary disposition and corrected the revised judgment on the arbitration award to reflect that the judgment was against DW-National Standard, not National-Standard. It also argues that the trial court erred when it granted DW-National Standard's motion and dismissed TSP from the case.[6] We disagree.

A trial court's authority to review an arbitrator's award is limited. See *TSP Servs*, 329 Mich App at 620. The trial court has the authority to do one of three things: (1) confirm the arbitrator's award; (2) vacate the award if it determines that it had been obtained through fraud, duress, or other undue means; or (3) modify the award or correct errors that are apparent on the face of the award. See *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 495-496; 475 NW2d 704 (1991); MCR 3.602(I), (J), and (K). Generally, courts may only review an arbitrator's decision for errors of law. See *TSP Servs*, 329 Mich App at 620.

In this case, the trial court determined that there were no errors on the face of the arbitrator's award, and it entered judgment on the award without including TSP's desired language, i.e., to specify that the judgment was against DW-National Standard. TSP argues on appeal that the undisputed evidence showed that it prepared its original proposal for DW-National Standard, that DW-National Standard entered into the agreement to remediate the property at issue, that DW-National Standard entered into the arbitration agreement, and that the arbitrator ultimately entered an award against DW-National Standard, not National-Standard. We conclude that TSP has not shown grounds that would permit the trial court to enter a judgment that deviated from the arbitrator's award.

TSP repeatedly emphasizes that National-Standard withdrew its right to conduct business in this state before the events at issue. It claims that this withdrawal established as a matter of law that DW-National Standard was the only entity that could have legally engaged in business in this state under the name National-Standard, LLC. From that, it maintains that it must have been referring to DW-National Standard when it prepared its proposal addressed to an entity by the

---

[6] TSP also argues that it was entitled to its attorney fees incurred after the arbitration. We decline to address this issue because TSP abandoned it by failing to raise it in its statement of the questions presented, see *Maple BPA, Inc v Bloomfield Charter Twp*, 302 Mich App 505, 517; 838 NW2d 915 (2013), and by failing to meaningfully address the relevant law, *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Moreover, it does not appear that this issue was presented to the trial court.

name of National-Standard, LLC. TSP places far too much weight on National-Standard's filing of a certificate of withdrawal.

National-Standard had to originally obtain a certificate of authority from LARA before it could transact business in this state. See MCL 450.5002. It later applied for a certificate of withdrawal. Once National-Standard's certificate of withdrawal had been accepted, see MCL 450.5006, National-Standard ceased to have the authority to transact business in this state. The fact that it did no longer had authority to *transact* business in this state did not, however, automatically preclude National-Standard from owning real property in this state or from contracting for services related to its property ownership. The Legislature specifically excluded owning real or personal property—without more—as an activity that constitutes transacting business in this state. See MCL 450.5008(i). It also excluded the creation or acquisition of indebtedness, mortgages, or security interests in real or personal property from constituting transacting business, see MCL 450.5008(g), and excluded participation in an isolated transaction that is complete within 30 days and not part of repeated transactions of a like nature, MCL 450.5008(j).

Examining similar statutory requirements for corporations, our Supreme Court has held that the licensure requirement did not preclude corporations from transacting *any* business without a certificate of authority; rather, the Legislature only forbade a corporation from *carrying on* business in this state without complying with the statute. See *Long Mfg Co, Inc v Wright-Way Farm Serv, Inc*, 391 Mich 82, 88; 214 NW2d 816 (1974). The Court in *Long Mfg* explained that the term "doing business" implies a continuity of act and purpose. *Id*. Although a single transaction might disclose a corporation's purpose of carrying on business in this state, the nature of that transaction must demonstrate something more than a mere independent or isolated transaction. *Id*. at 88 n 7. There must be evidence that the entity carried on or intended to carry on regular and continuous business. *Id*. at 94-95.

In this case, the undisputed evidence showed that National-Standard owned the real property at issue as the successor to National-Standard Company and that DW-National Standard had no interest in the real property. The evidence also showed that National-Standard and DW-National Standard were separate legal entities. There was testimony that National-Standard became interested in demolishing the buildings on the property at issue when Regal approached National-Standard and suggested that it could remedy the asbestos and demolish the buildings on about 10 acres of property owned in Niles, Michigan, at no cost. Steele testified that that was an attractive offer because the property in Niles was in disrepair and exposed National-Standard to liability. The decision to enter into the remediation agreement does not, itself, demonstrate that National-Standard had been transacting or intended to transact continuous business in this state, but rather came about by virtue of its real property ownership and attendant exposure to liability for that property. See *id*. Accordingly, TSP did not show that National-Standard could not legally enter into an agreement regarding the remediation and demolition of the buildings on its property without the certificate required by MCL 450.5002.

Further, even if National-Standard were required to have a current certificate of authority to execute a contract with TSP, the fact that it did not have a valid certificate does not establish that the actual party to the underlying agreement must have been DW-National Standard rather than National-Standard. The Legislature has provided civil penalties for a foreign limited-liability

company that transacts business in this state without a certificate of authority. See MCL 450.5007(5) and (6). Notably, these penalties do not include that any agreement entered into by the foreign entity shall be deemed void or even voidable on that basis; to the contrary, MCL 450.5007(3) states that the failure to obtain a certificate of authority does not "impair the validity of any contract or act of the foreign limited liability company or prevent the foreign limited liability company from defending any action, suit, or proceeding in a court of this state." Similarly, although foreign limited-liability companies that do not have a certificate of authority are prohibited from maintaining a lawsuit or proceeding in this state, National-Standard could *defend* against TSP's lawsuit without the need for a certificate, see MCL 450.5008(1)(a), and, to the extent that it was precluded from countersuing, the remedy for that would have been to dismiss the counterclaim without prejudice pending application for a certificate of authority, see MCL 450.5007(2).

This Court recognizes that DW-National Standard had the authority to transact business under the name National-Standard, LLC, because it filed a certificate of assumed name for that name. See MCL 450.4206(1). But the evidence that DW-National Standard could conduct business under that name, and that National-Standard could not transact regular business in this state under that name, did not establish as a matter of law that TSP did not contract with National-Standard to remediate property that it owned. Consequently, whether it was DW-National Standard or National-Standard that executed the remediation agreement was, at best, a question of fact that was inherent in the claims that were addressed at the arbitration.

TSP also places great emphasis on the evidence that Moran and Steele both had roles in the day-to-day activities of DW-National Standard, which it claims showed that the men were acting on behalf of DW-National Standard, not National-Standard. An agent is any person who acts for or represents another by the other's authority. See *Saums v Parfet*, 270 Mich 165, 171; 258 NW 235 (1935). The existence of an agency relationship must be determined by the relations of the parties, as determined by their agreements or acts. *Id.* A fundamental characteristic of an agent is that an agent generally acts to bring about, modify, affect, accept performance of, or terminate contractual obligations. *Id.* at 172. But it is not enough that the person executing an instrument has the authority to bind an entity to an agreement; the agent "must, in fact, make it the obligation of that person in terms, in order to bind him." *Detroit v Jackson*, 1 Doug 106, 115 (Mich, 1843). Moreover, the label or title used by the agent when executing an agreement does not settle whether the agent in fact acted to bind his or her principal:

> If, by the terms of the agreement, a party describing himself as agent, undertakes to do certain things, the mere addition of the word agent, or indeed any other designation which he may add to his name, will not make it the contract of his principal. Such addition will be regarded as mere description; and will not have the effect of binding a third person, who is not, in form, made a party to the instrument. [*Id.*]

In ascertaining whether an agent's execution of an agreement binds the agent's principal, courts must examine the agreement as a whole to determine whether the agreement purports to be an obligation of the principal. *Id.* at 115-116. The parties may present parol evidence to establish the true identity of the principal on whose behalf the agent acted. See *Timmerman v Bultman*, 243 Mich 344, 348-349; 220 NW 754 (1928). Nevertheless, a party seeking to hold an agent's principal

liable on a contract must still establish that the agent was in fact acting for his or her principal before the principal may be bound. *Id.* at 347-348. It is not enough to show that the agent generally had the authority to bind the principal, or even that the agent acted for the benefit of the principal. See 2 Restatement Agency, 2d, § 186, p 420 (stating that the agent must have acted on his or her principal's account), comment *c*, pp 421-422 (noting that it is not enough to show that the agent acted generally for his or her principal's benefit; the third party must show that the agent acted as an agent in a matter entrusted to him or her as an agent). The same is true in cases in which the principal has acted in such a way as to justify a reasonable third party in believing that the agent had the authority to act: the party seeking to hold the principal liable must show that the agent acted as the principal's agent in the transaction at issue. See *Mossman v Millenbach Motor Sales*, 284 Mich 562, 566-569; 280 NW 50 (1938); *Hertz Corp v Volvo Truck Corp*, 210 Mich App 243, 247; 533 NW2d 15 (1995).

The evidence in this case indeed showed that Moran and Steele were agents for both DW-National Standard and National-Standard. But given that National-Standard did not conduct regular business operations and served only as a holder of real properties, which included the Niles Complex, it is unremarkable that agents for DW-National Standard, a going concern located in Niles, Michigan, might also be authorized to act on behalf of National-Standard when issues involving its real property in Michigan arose. The mere fact that Moran and Steele were authorized agents for both entities did not mean that any actions taken by either man necessarily bound DW-National Standard. Indeed, because DW-National Standard had no interest in the properties, it did not have any exposure to liability for the property. For that reason, the testimony of Steele and Moran suggest that they were acting on behalf of National-Standard, not DW-National Standard, even though they both also had roles with DW-National Standard.

Consequently, TSP could not rely on the fact that Moran and Steele could in theory have bound DW-National Standard to the underlying agreement as proof that they did in fact do so. The same is true of the evidence that DW-National Standard issued a purchase order and paid for the services at issue. There is nothing improper about an agent, who is otherwise authorized to do so, to cause one entity to make payments for the benefit of a related entity. See, e.g., *Landyskowski v Lark*, 108 Mich 500, 502; 66 NW 371 (1896) (noting that an agent, for example, may enter into a contract in his or her own name even though it does not benefit the agent, but instead benefits the principal). At best, whether Steele and Moran in fact bound DW-National Standard, as opposed to National-Standard. to the remediation agreement was a question of fact to have been decided by the arbitrator. Accordingly, TSP failed to identify any grounds that would permit the trial court to determine anew which parties had entered into the underlying remediation agreement.

TSP also argues that the evidence shows that it entered into the arbitration agreement with DW-National Standard, and so, it concludes, the arbitrator's award must have been against DW-National Standard, not National-Standard. Notably, in its complaint, TSP carefully distinguished between DW-National Standard and National-Standard by referring to DW-National Standard as "DW-National Standard-Niles, LLC, d/b/a National-Standard, LLC," and referring to National-Standard as "National-Standard, LLC." It continued to distinguish between the two entities in the same way when captioning its later documents.

The arbitration agreement states that the agreement was "by and between TSP Services, Inc. d/b/a TSP Environmental ('TSP'), a Michigan corporation ('TSP'), and National-Standard,

LLC, a Michigan limited-liability company ('National Standard')." Although neither DW-National Standard nor National-Standard is a Michigan limited-liability company, given the captioning of the parties' documents in the underlying lawsuit, the drafter's decision to identify TSP by its formal name (followed by its assumed name) suggests that the other entity was also identified in the same way—that is, the "National-Standard" entity was also identified by its formal name. The fact that the drafter referred to National-Standard, LLC, as a Michigan limited-liability company also shows that, while technically incorrect (in that it was not a Michigan entity, but a Delaware entity), the drafter was attempting to refer to the entity by its formal name and not simply by an assumed name. It is therefore far from evident from the face of the agreement that DW-National Standard was a party to the arbitration agreement.

In any event, to the extent that there might have been any ambiguity about the identity of the parties to the arbitration agreement, the arbitrator resolved the ambiguity on the first day by formally identifying the parties to the arbitration: "This is the private arbitration being held in Chicago, Illinois, involving TSP Services, doing business as TSP Environmental, a Michigan corporation, Claimant/Counter-Respondent versus National Standard, LLC, a Delaware limited liability company, Respondent/Counter-Plaintiff." By so identifying the entity opposing TSP as "National Standard, LLC, a Delaware limited liability company," the arbitrator thus initially identified it—just as it had done in identifying TSP—by its formal name; he only referred to TSP's assumed name after first identifying its formal name. The arbitrator notably did not use the formal name of DW-National Standard.

The record also shows that counsel for TSP stated that he was appearing for TSP Services, Inc.; he did not use TSP's assumed name of TSP Environmental. Counsel for the entity opposing TSP identified himself as "representing National Standard" and stated that Steele was present as HEICO's representative. In sum, there is nothing to suggest that any of the participants in the arbitration referred to the corporate entities they represented by their assumed names. On the record from the arbitration, there was no basis for concluding that the arbitrator arbitrated a dispute between TSP and DW-National Standard. Rather, according to both the face of the agreement and the record of the proceedings, the arbitrator arbitrated a dispute between TSP and National-Standard, which was the entity that owned the real property for which TSP contracted to provide remediation and demolition services.

TSP's arguments and claims at the arbitration also demonstrate that it was arbitrating against National-Standard. Notably, TSP claimed that it had the right to recover the steel from the demolition of the Niles Complex. The property at issue, including the steel recoverable after demolition, was owned by National-Standard, not DW-National Standard; accordingly, if TSP had sought to arbitrate its claims regarding the steel against DW-National Standard, it was arbitrating against the wrong entity from the beginning. Similarly, TSP also asserted a claim on a construction lien, under the Construction Lien Act, for the unpaid balance of the contract and all consequential damages. To establish its construction lien claim, TSP had to demonstrate that it provided an improvement to the property under the authority of a contract *with the owner or lessee of the property.* See MCL 570.1103(5); MCL 570.1107(3) (defining contractor as a person who, "pursuant to a contract with the owner or lessee of real property, provides an improvement to real property"). There was no dispute that DW-National Standard had no interest in the Niles Complex. Consequently, TSP could not have succeeded on its lien claim unless it was asserting that National-Standard was the party to the remediation agreement and, by necessary inference, was a party to

the arbitration agreement. Accordingly, when the arbitrator approved TSP's lien, the arbitrator necessarily had to have done so with the understanding that the remediation agreement was with National-Standard.

Because DW-National Standard was not a party to the remediation agreement, it could not—as a matter of law—be liable for a breach of any of its terms. See *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014) (stating the elements of a breach-of-contract claim and noting that the plaintiff must show that the defendant was a party and breached the contract). Similarly, TSP could not establish a lien claim against DW-National Standard because it was undisputed that DW-National Standard did not own the property at issue. See MCL 570.1103(5); MCL 570.1107(3) (defining contractor as a person who, "pursuant to a contract with the owner or lessee of real property, provides an improvement to real property"). TSP's claims of unjust enrichment and promissory estoppel similarly could not apply to DW-National Standard. *See Wright v Genesee Co*, 504 Mich 410, 421; 934 NW2d 805 (2019); see also *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193-194; 729 NW2d 898 (2006).

Because TSP failed to establish that there were any grounds in fact or law for altering or vacating the arbitrator's award in any way beyond that which this Court provided in its earlier remand, the trial court did not err by denying TSP's motion for summary disposition requesting such relief, or by granting DW-National Standard's motion and dismissing it from TSP's suit. See *Konal v Forlini (On Remand)*, 235 Mich App 69, 74; 596 NW2d 630 (1999).

### III. REMAINING CLAIMS OF ERROR

TSP Services also argues that, even if the trial court did not agree that the arbitration award and judgment were in fact against DW-National Standard, once it realized that the award and judgment *should have been* against DW-National Standard, the trial court should have modified the judgment to clarify that it was against DW-National Standard. More specifically, it argues that the trial court had the authority to change the name of the party against whom the judgment was entered under the doctrine of misnomer or under MCL 600.2301. We disagree.

MCL 600.2301 provides courts with the authority to correct errors or defects in proceedings, and provides:

> The court in which any action or proceeding is pending, has power to amend any process, pleading or proceeding in such action or proceeding, either in form or substance, for the furtherance of justice, on such terms as are just, at any time before judgment rendered therein. The court at every stage of the action or proceeding shall disregard any error or defect in the proceedings which do not affect the substantial rights of the parties.

As already discussed, the record from the arbitration demonstrates that the arbitration was between TSP and National-Standard; it did not involve DW-National Standard. Modifying the award to name a different entity as liable for damages would adversely affect DW-National Standard's substantial rights by holding it liable for claims that it did not have the opportunity to litigate at the arbitration. The trial court, therefore, did not err when it determined that it could not rely on MCL 600.2301 to enter a judgment that was inconsistent with the arbitrator's award against

National-Standard. See, e.g., *Driver v Naini*, 490 Mich 239, 254-255; 802 NW2d 311 (2011) (rejecting the argument that MCL 600.2301 could be used to amend a notice of intent to sue to include a different party so that the period of limitations might be tolled as to that party).

The same is true of the doctrine of misnomer. A trial court has the authority to correct the name of a party when the change corrects an inconsequential deficiency or makes a mere technical change. However, the doctrine cannot be used when it would effect a change in the parties. See *Miller v Chapman Contracting*, 477 Mich 102, 106-107; 730 NW2d 462 (2007). The name change requested by TSP would effect a complete change in the party subject to the arbitration award. Consequently, the trial court did not err when it declined to transform the arbitration award from one against National-Standard to one against DW-National Standard by "clarifying" the applicable name in the judgment.

Finally, TSP argues that the trial court erred by entering a final order closing the case before TSP had conducted a foreclosure sale. TSP relies on MCL 570.1121 for the proposition that the trial court had to retain jurisdiction after entering the judgment until the completion of the foreclosure sale. When a trial court enters an order of foreclosure, it should only enter a final order distributing the funds after the foreclosure sale. See MCL 570.1121(4). However, the trial court is not required to enter an order of foreclosure in every construction lien case. Rather, MCL 570.1121(1) provides that if the trial court

> finds that a lien claimant is entitled to a construction lien upon the real property to which he or she furnished an improvement, and the amount adjudged to be due has not been paid, the court *may* enter a judgment ordering the sale of any interest in the real property, or a part of the real property, to which the construction lien attaches. [Emphasis added.]

The term "may" is permissive, not mandatory. See *Walters v Nadell*, 481 Mich 377, 383; 751 NW2d 431 (2008). Given that TSP did not request an order of foreclosure, it cannot be said that the trial court's failure to include one in the judgment fell outside the range of reasonable and principled outcomes. See *Ewald v Ewald*, 292 Mich App 706, 714-715; 810 NW2d 396 (2011). And because the trial court did not order a foreclosure, it did not err by concluding that its order regarding the parties' cross motions for summary disposition was a final order that closed the case.

Affirmed. As the prevailing party, DW-National Standard may tax costs. See MCR 7.219(A).

/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra